NOT FOR PUBLICATION (Document Nos. 11, 20)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
CLEAN HARBORS, INC. and CLEAN :
HARBORS ENVIRONMENTAL :
SERVICES, INC., :
:
       Plaintiffs, : Civil No. 09-5175 (RBK/AMD)
:
       v. : **OPINION**
:
ACSTAR INSURANCE COMPANY, :
BOEING CAPITAL CORPORATION, and :
MCDONNELL DOUGLAS TRUCK :
SERVICES, INC., :
:
       Defendants. :
_____ :

**KUGLER**, United States District Judge:

    This matter arises out of a diesel gas spill nearly twenty years ago and the subsequent costs for clean-up. This civil action is one of three currently pending cases relating to the dispute. Two cases are proceeding in the District of New Jersey (this one and <u>Boeing Capital Corporation et al. v. Clean Harbors Environmental Services, Inc. et al.</u>, No. 09-2820), and one is proceeding in the District of Connecticut (<u>ACSTAR Insurance Company v. Clean Harbors, Inc. et al.</u>, No. 09-1261). Presently before the Court are two motions: 1) the Motion to Dismiss, Stay, or Transfer by Defendant ACSTAR Insurance Company (Doc. No. 11); and 2) the Cross Motion to Consolidate Cases by Plaintiffs Clean Harbors Environmental Services, Inc. and Clean

1

Harbors, Inc. (collectively, "Clean Harbors") (Doc. No. 20).  Largely on the basis of the first-filed rule, the Court will grant the Motion to Dismiss, Stay, or Transfer and will dismiss this action without prejudice.  The Court will dismiss as moot the Motion to Consolidate.

I.   BACKGROUND

   A.   **Factual History**[1]

On February 6, 1991, McDonnell Douglas Truck Services[2] retained Clean Harbors[3] to conduct a site assessment and subsurface investigation of its truck leasing and service facility in Egg Harbor, New Jersey.  Clean Harbors subcontracted drilling services to Trinity Drilling Company, Inc. (a non-party to any of the three suits).  On February 12, 1991, Trinity, while performing sampling activities, punctured a 10,000 gallon underground storage tank that contained diesel fuel.  The subsequent spill discharged fuel into the surrounding soils causing contamination to the soil and groundwater.  On November 10, 1993, McDonnell Douglas and Clean Harbors entered into a letter agreement ("the 1993 Agreement") providing that Clean Harbors would reimburse McDonnell Douglas for remediation costs associated with the spill.  Clean Harbors participated in remediation activities at the spill site until April 8, 2008, at which time it informed Boeing Capital Corporation[4] (McDonnell Douglas is a subsidiary of Boeing) via

---

[1] The bulk of the facts below are taken from the Complaint and assumed true.

[2] A Delaware corporation with its principal place of business in Washington.  Compl. at ¶ 5.

[3] Both Clean Harbors entities are Massachusetts corporations with principal places of business in Massachusetts.  Compl. at ¶¶ 1-2.

[4] A Delaware corporation with its principal place of business in Washington.  Compl. at ¶ 4.

2

letter that its contractual obligations had been fulfilled and that it was not responsible for further activities at the site. On June 6, 2009, Boeing and McDonnell Douglas filed suit in the District of New Jersey against Clean Harbors ("the Boeing Action") alleging that it had failed to pay invoices submitted under the 1993 Agreement. Boeing and McDonnell Douglas seek, among other things, a declaratory judgment holding Clean Harbors liable for past and future remediation costs.

Notwithstanding the above, Clean Harbors insists that it is not responsible for the costs of clean-up by virtue of an insurance policy it received in 1990. Clean Harbors alleges that United Coastal Insurance Company issued a claims-made insurance policy ("the Claims-Made Policy") to Clean Harbors that was in effect from December 19, 1990 to December 19, 1991. Sometime around November 22, 2005, United Coastal and ACSTAR[5] entered into a Quote Share Reinsurance Agreement and an Administrative Services Agreement. Pursuant to those agreements, United Coastal ceded to ACSTAR all liability for any claim upon any policy issued by United Coastal. United Coastal also appointed ACSTAR as its administrator for administering claims and liabilities on policies issued.

Under the Claims-Made Policy, ACSTAR is obligated to defend and indemnify Clean Harbors for all sums that Clean Harbors is legally obligated to pay as a result of claims made against it that were reported during the policy period. In support of its fulfillment of its obligation under the Claims-Made Policy, Clean Harbors alleges that on March 8, 1991, it provided written/email notice of the spill to its insurance broker, Johnson & Higgins Company.

---

[5] An Illinois corporation with its principal place of business in Connecticut. Compl. at ¶ 3.

On that same date, Johnson & Higgins sent to United Coastal via fax Clean Harbors' written/email notice of the spill. By letter dated March 1, 2007, Clean Harbors notified ACSTAR that the new owner of the spill site, Boeing, had contacted Clean Harbors and advised that it was seeking reimbursement for monies spent to date to manage and remediate the spill. The March 1 letter also notified ACSTAR that Clean Harbors had met with Boeing in January 2007 to discuss the claim, and advised that Clean Harbors had made a settlement offer.

By letter dated July 13, 2009, ACSTAR agreed to undertake the defense of Clean Harbors in the Boeing Action, subject to a full and complete reservation of its rights. Specifically the July 13 letter stated: "Please be advised that we are fully reserving our right to institute a proceeding for a declaratory judgment which proceeding would declare the rights and duties of the parties under the Policy with respect to the [Boeing Action]." Case certif., Ex. N at 5.[6]

B. **Procedural History**

On August 6, 2009, ACSTAR filed a single count suit in the District of Connecticut ("the Connecticut Action") against Clean Harbors Inc., Clean Harbors Environmental Services, Inc., Boeing Capital Corporation, and McDonnell Douglas Truck Services, Inc., seeking declaratory relief. In particular, ACSTAR seeks four things:

---

[6] To the extent that the Court is bound by the ordinary rules governing consideration of extraneous matters on a motion to dismiss (even though the pending motion is based on the first-filed rule, which is based on federal comity), the Court can consider the entire July 13 letter attached to the Gary M. Case certification without converting ACSTAR's Motion to one for summary judgment because it is a document expressly relied upon in the Complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (holding "a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment'"); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (holding "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

> 1) a declaration that ACSTAR does not owe a duty to defend Clean Harbors, Inc. and Clean Harbors Environmental for all claims alleged against them in the Boeing Action;
>
> 2) a declaration that ACSTAR does not have a duty to indemnify Clean Harbors, Inc. and Clean Harbors Environmental for any liability that may arise out of the Boeing Action;
>
> 3) judgment granting ACSTAR reimbursement for its costs and fees incurred in connection with the Boeing Action; and
>
> 4) judgment granting ACSTAR such other relief that the Court deems just and proper.

Case certif., Ex. B at 11.  Among other allegations in the Connecticut Action, ACSTAR alleges that it is not obligated to act under the Claims-Made Policy because Clean Harbors 1) did not timely file notice of a claim; 2) failed to immediately forward demands, notices, summons, orders, and other process; and 3) prejudiced ACSTAR's rights by entering into an agreement with McDonnell Douglas, and by entering into a settlement with Trinity for $38,000.  Case certif., Ex. B at ¶¶ 36, 39, 41, 44, 47.  ACSTAR alleges that Boeing estimates that it will cost between $5 million and $7 million more to complete remediation of the spill, and that Boeing is already owed $1,345,662.36 for Clean Harbors's breach of the 1993 Agreement.  Notably, McDonnell Douglas, Boeing, and Clean Harbors have filed Answers in the Connecticut Action.  See Civ. No. 09-1261 (D. Conn.) at Doc. Nos. 13, 54.[7]

On September 24, 2009, Clean Harbors responded by filing a three count suit in the Superior Court of New Jersey, Essex County, likewise seeking declaratory relief.  Notice of

---

[7] Assuming again that the Court is bound by the ordinary motion to dismiss rules, the Court has not converted the Motion to one for summary judgment by considering docket entries in a publicly filed civil action, i.e., matters of public record.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (holding court may consider in motion to dismiss "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'" (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004))).

removal at ¶ 2.  ACSTAR, after being served the Summons and Complaint on October 5, 2009, removed the Complaint to this Court (with the consent of the other Defendants) on October 7, 2009.  Notice of removal at ¶¶ 3, 13.  The three counts of the underlying Complaint are 1) declaratory judgment, 2) breach of contract, and 3) estoppel.  Clean Harbors seeks four things:

> 1) a declaration that Clean Harbors is entitled to insurance coverage, including defense and indemnity, for claims made under the Claims-Made Policy, including those arising out of the Boeing Action;
>
> 2) a declaration that Clean Harbors is entitled to reimbursement of all costs and expenses (and interest) that it has incurred or will incur with regard to Clean Harbors's obligations under the 1993 Agreement, including costs and expenses arising out of the Boeing Action;
>
> 3) a declaration that Clean Harbors is entitled to reimbursement for all costs and expenses, including attorneys' fees and interest, incurred in the prosecution of the present action to effect insurance coverage; and
>
> 4) judgment granting such other relief as the Court deems just and proper.

Compl. at 7.

On November 9, 2009, ACSTAR filed the Motion to Dismiss, Stay, or Transfer pursuant to the first-filed rule.  Doc. No. 11.  On November 20, 2009, Clean Harbors filed the Cross Motion to Consolidate this action with the Boeing Action.  Doc. No. 20.  After all briefing had closed, ACSTAR notified the Court via letter dated February 19, 2010 that the Honorable Stefan R. Underhill had denied Clean Harbors' parallel Motion to Transfer in the Connecticut Action. Doc. No. 28.  Clean Harbors in turn acknowledged that Judge Underhill's denial meant that the Connecticut Action would proceed to a resolution, which meant that if this Court denied ACSTAR's Motion, parallel proceedings would occur on the same subject matter with the same parties in two jurisdictions.  Doc. No. 31 at 1-2.  Notwithstanding, Clean Harbors relied on its

previously filed brief to support that ACSTAR's Motion should still be denied.

## II. DISCUSSION

ACSTAR argues that this action should be either dismissed, stayed, or transferred under the first-filed rule. ACSTAR br. at 9-14. It argues that because there are two actions pending between the same parties involving the same dispute in two federal courts, and because no exception to the first-filed rule applies, the first-filed Connecticut Action should control and this matter should cease. ACSTAR br. at 9-14. Clean Harbors counters that the first-filed rule is not a rigid rule, and the circumstances of this dispute warrant ignoring the rule under several of the well-recognized exceptions. Clean Harbors br. at 8-12. It further asserts that not only should the Court deny ACSTAR's Motion, but also the Court should consolidate this action with the Boeing Action. Clean Harbors br. at 13-17. The Court agrees with ACSTAR that the first-filed rule applies to this dispute, and finds that this matter should be dismissed without prejudice.

### A. First-Filed Rule

Under the first-filed rule, "'[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" EEOC v. Uni. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)). The rule is intended to encourage "sound judicial administration" and to promote "comity among federal courts of equal rank." Id. The first-filed rule gives a court power to "enjoin" proceedings involving the same parties and the same issues before another district court. Id. at 971-72 (citing Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Corp., 125 F.2d 1008, 1009 (3d Cir. 1942)). More specifically, the rule applies where the second action is "'truly duplicative'" of the first suit, meaning the two matters are "'materially on all fours[.]'" Grider v. Keystone Health Plan

Cent., Inc., 500 F.3d 322, 334 n.6 (3d Cir. 2007) (quoting Smith v. SEC, 129 F.3d 356, 361 (6th Cir. 1997) (quoting Congress Credit Corp. v. AJC Int'l, Inc., 42 F.3d 686, 689 (1st Cir. 1994))). The issues in the two matters must be such that "'a determination in one action leaves little or nothing to be determined in the other.'" Id. (quoting same).  Once a court determines that the first-filed rule applies, it has the option to either dismiss, stay, or transfer the action pursuant to 28 U.S.C. § 1404(a).  Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., 416 F. Supp. 2d 1048, 1052-53 (E.D. Pa. 2006); Allianz Life Ins. Co. of N. Am. v. Estate of Bleich, No. 08-0668, 2008 WL 4852683, at *3 (D.N.J. Nov. 6, 2008) (citing Keating Fibre).

      However, the first-filed rule is neither rigidly applied nor absolute.  EEOC, 850 F.2d at 972.  The rule is grounded in equitable principles and thus does not apply where, for example, there is evidence of 1) bad faith or 2) forum shopping, or where 3) the second-filed action is further developed than the first, or 4) the first-filing party commenced suit in anticipation of the second party's imminent filing in a less favorable forum.  Id. at 976-77.  Under these principles and those above, courts routinely disregard the rule and permit the second-filed action to continue.  See, e.g., EEOC, 850 F.2d at 978 (upholding district court's rejection of first-filed rule where, inter alia, defendant filed first action in different circuit to avoid unfavorable precedent); CertainTeed Corp. v. Nichiha USA, Inc., No. 09-3932, 2009 WL 3540796, at *3 (E.D. Pa. Oct. 29, 2009) (rejecting rule where two actions not truly duplicative); PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co., No. 09-0896, 2009 WL 2326750, at *5-8 (E.D. Pa. July 28, 2009) (rejecting rule where defendant forum shopped, engaged in procedural gamesmanship, and attempted to conceal state court filing); One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 329-30 (D.N.J. 1997) (rejecting rule where defendant admitted that it

filed in anticipation of other party's suit, the second proceeding was more developed, and first-filed action was not a proper declaratory judgment action).

Applying the first-filed rule here, the Court is first convinced that the Connecticut Action was filed before the present action. <u>Compare</u> Case certif. at ¶ 30 (Connecticut Action filed August 6, 2009), <u>with</u> Notice of removal at ¶¶ 2, 14 (New Jersey state court action filed September 24, 2009 and removed on October 7, 2009). The Court is also convinced that the Connecticut Action and the present action are truly duplicative. Both actions seek the same relief: the parties wish a court to declare whether ACSTAR must defend Clean Harbors and pay its liabilities. <u>Compare</u> Compl. at 7, <u>with</u> Case certif., Ex. B at 11. If this Court were to decide the present dispute, there would be nothing for the Connecticut court to decide. Indeed, even Clean Harbors seems to agree that these actions are duplicative. <u>See</u> Doc. No. 31 at 1-2 ("Accordingly, if the Court were to deny ACSTAR's motion to dismiss, transfer, or stay, two coverage actions involving the same parties will then be pending in separate jurisdictions: the Connecticut Action before the District of Connecticut and the present action before this Court.").

Notwithstanding this concession, Clean Harbors argues that the first-filed rule should not apply because 1) judicial administration and efficiency would not be served since this action and the Boeing Action are integrally related; 2) ACSTAR engaged in a race to the courthouse; 3) ACSTAR lulled Clean Harbors into believing ACSTAR would defend it, and then ACSTAR preemptively filed suit to avoid its obligation; and 4) ACSTAR initiated the Connecticut Action to achieve "what it may perceive to be a more favorable forum." <u>See</u> Clean Harbor br. at 9-12. ACSTAR of course refutes these allegations. <u>See</u> ACSTAR reply at 7-12. The Court is not convinced that any of Clean Harbors's "exceptions" to the first-filed rule warrant continuing this

9

suit in the District of New Jersey.

Clean Harbors's first challenge is based on the notion that if the Boeing Action and the coverage actions (this one and the Connecticut Action) proceed in different courts, resources will be wasted and potentially differing factual and legal determinations may result.  See Clean Harbors br. at 10.  However, this argument became moot the moment of Judge Underhill's denial of Clean Harbors's Motion to Transfer the Connecticut Action.  Regardless of what this Court does, two federal courts will have concurrent and continuing jurisdiction over different issues within the same underlying dispute.  Moreover, Clean Harbors's purported concern about the efficiency of the litigation is especially weak since Clean Harbors *itself* attempted to bifurcate the liability and coverage actions by first filing in New Jersey state court.  Furthermore, the Court finds no reason why a coverage dispute must or should proceed in the same action or in the same court as a liability dispute.  Cf. Colony Nat'l Ins. Co. v. UHS Children Servs., Inc., No. 09-2916, 2009 WL 3007334 (E.D. Pa. Sept. 11, 2009) (granting motion to dismiss under first-filed rule where insurance company first filed declaratory relief action in Tennessee regarding insurance coverage for wrongful death action proceeding in Pennsylvania, and where insured second filed suit in Pennsylvania for the same declaration).

Clean Harbors's second and third arguments are likewise unpersuasive.  First, it can hardly be called a race to the courthouse where ACSTAR sent a letter to Clean Harbors on July 13 – which expressly reserved the right to file – and then filed three weeks (plus) later on August 6.  Further, it can hardly be called a race when Clean Harbors thereafter waited over a month until September 24 to file its own action.  In this "race," even the fabled slow-footed tortoise would have lapped the field.  Second, Clean Harbors cannot believably argue that they were

lulled into inaction by ACSTAR's July 13 letter, which expressly stated: "Please be advised that we are fully reserving our right to institute a proceeding for a declaratory judgment which proceeding would declare the rights and duties of the parties under the Policy with respect to the [Boeing Action]." Case certif., Ex. N at 5.  This was clear notice that ACSTAR was pensive about its obligation to defend and pay, and the letter was clear notice to Clean Harbors that litigation was forthcoming.  Clean Harbors cannot now complain that they were caught unawares.

Finally, nothing in the record suggests that either Connecticut or New Jersey law favors ACSTAR, or indeed that ACSTAR filed in Connecticut to achieve an advantage.  As pointed out by ACSTAR, it is not even clear which substantive state law applies, let alone how ACSTAR achieved favor by filing in Connecticut.  See ACSTAR reply at 11.  Certainly one would expect that at minimum Clean Harbors would direct the Court's attention to what the advantage gained actually is, but it did not do so, and the Court will not sua sponte engage in any such inquiry.

Therefore, the Court concludes that this dispute falls squarely within the first-filed rule and no exception to the rule applies such that this action should continue here.

**B.     Dismissal**

Having concluded that the first-filed rule applies, it is then incumbent upon the Court to decide whether this action should be dismissed, stayed, or transferred pursuant to 28 U.S.C. § 1404(a).  Keating Fibre, 416 F. Supp. 2d at 1052-53.  ACSTAR did not expressly state a preference for any one of the three.  See ACSTAR br. at 10.  Clean Harbors for its part opposed dismissal by arguing that the first-filed rule does not apply, and opposed transfer by arguing that ACSTAR failed to meet its burden under § 1404(a) to show that transfer was warranted.  See

Clean Harbors br. at 9, 12.  Neither party meaningfully addressed a stay.  Under these circumstances, the Court holds that this action is appropriately dismissed without prejudice.

In deciding whether to dismiss, stay, or transfer an action, a court can look at whether the first-filed action is vulnerable to dismissal on jurisdictional grounds, and if so, the court should stay or transfer the second action rather than dismiss it.  See Nature's Benefit v. NFI, No. 06-4836, 2007 WL 2462625, at *4 (D.N.J. Aug. 27, 2007); see also Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 628 (9th Cir. 1991).  The Court can perceive no basis on which the Connecticut Action is susceptible to dismissal on jurisdictional grounds.  The District of Connecticut properly has diversity jurisdiction pursuant to § 1332, and since all parties have answered, it also has personal jurisdiction over all defendants.  See Fed. R. Civ. P. 12(h)(1).

The Court is further convinced that dismissal is the proper action here since, as noted by Clean Harbors, ACSTAR did little to support its burden to support transfer under § 1404(a).  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3d Cir. 1995) (holding burden of showing that the court should grant a transfer rests on the defendant).  Transfer under § 1404(a) requires a court to examine matters of venue, personal jurisdiction, and to examine a number of public and private factors.  See id. at 879-80; Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970).  On the present record, the Court is not convinced that it can complete the necessary inquiry to transfer this action to the District of Connecticut.  For example, transfer under § 1404(a) requires a finding that the district to which the matter is transferred can exercise personal jurisdiction over all of the defendants.  See Shutte, 431 F.2d at 24.  None of the materials before the Court show that Boeing Capital and/or McDonnell Douglas are subject to personal jurisdiction in the District of Connecticut.  While those parties have answered the Connecticut Action and thus waived

personal jurisdiction as a defense to that particular civil action, the Court has not been shown that those defendants are otherwise subject to personal jurisdiction in Connecticut absent a waiver.  In sum, ACSTAR has not shown that this matter might have been brought in the District of Connecticut.  See § 1404(a).  Therefore, this matter shall be dismissed without prejudice.

### C. Motion to Consolidate

Because the Court otherwise grants the Motion to Dismiss, Stay, or Transfer, Clean Harbors's Motion to Consolidate is moot and is therefore dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendant ACSTAR'S Motion to Dismiss, Stay, or Transfer is **GRANTED** and this civil action is **DISMISSED WITHOUT PREJUDICE**.  Clean Harbors's Motion to Consolidate is **DISMISSED** as moot.  An appropriate Order shall follow.


Date:   5-12-10              /s/ Robert B. Kugler
                             ROBERT B. KUGLER
                             United States District Judge